# STATE OF NORTH DAKOTA EX REL. HENRY OLSON, Respondent, v. ROYAL INDEMNITY COMPANY, a Corporation, Appellant.

(175 N. W. 625.)

**Warehousemen — proof in suit on bond of fraud in surrender of storage tickets for notes immaterial.**

In an action upon a warehouseman's bond, where it appeared that the principal was insolvent and his patrons who held storage tickets for the grain stored in the principal's elevator had surrendered them in exchange for promissory notes of the principal in order to allow him to continue in business, and the defendant bond company knew of the insolvency and of the settlement and received the storage tickets from the principal, it is *held:*

1. Where a warehouseman's bond is conditioned for the payment by the warehouseman for all grain purchased and all sums for which the principal shall become liable to holders of warehouse receipts, allegations of fraud, false representations and mistake in the surrender of storage tickets for promissory notes are nonessential and need not be proved.

**Warehousemen — Warehouseman necessary party defendant as principal in suit of joint bond; judgment against surety alone on warehouseman's bond proper.**

2. Where liability is based upon a joint bond of the warehouseman and a bonding company, the principal is a necessary party defendant, but where the action is brought as one in equity to determine the rights of all parties having an interest in litigating the liability of the bondsman, and where neither plaintiff nor defendants seek any relief against the warehouseman, a judgment may properly be entered against the bondsman.

**Trial — court may submit issue to jury for advisory verdict.**

3. Though the action be one triable to the court as a suit in equity, it was not error for the court to deny the defendant's motion that the case be tried to the court. Under § 7608, Comp. Laws 1913, the trial court, in its discretion, could properly submit to a jury issues of fact in an equity case for an advisory verdict.

**Evidence — direct testimony as to intention admissible.**

4. Where the actual intention with which an act is done is material, a party may give direct testimony of his intention.

**Novation — payment — debtor's note not payment unless so intended.**

5. A promissory note of a debtor does not operate as an absolute payment of his obligation unless it was intended to so operate.

**Trial — refusal to strike out hearsay testimony admitted without objection, proper.**

6. Where a party allows hearsay testimony to be elicited without objection, he cannot predicate error on the refusal of the trial judge to strike out on motion a selected portion of such testimony.

Opinion filed November 15, 1919.

Appeal from the District Court of Ward County, *Leighton,* J. Affirmed.

*W. H. Sibbald* and *John C. Lowe,* for respondent.

*W. H. Stutsman,* for appellant.

BIRDZELL, J. This is an appeal from an order denying the defendant's motion for judgment upon a special verdict and for a judgment notwithstanding a special verdict, and also from the judgment entered. The action is upon a warehouseman's bond, conditioned, among other things, for the payment by H. T. Hogy, the warehouseman and principal on the bond, for all grain purchased and all sums for which the principal shall become liable to holders of warehouse receipts. It appears that Hogy, prior to 1916, operated two elevators, one at Burlington and one at Des Lacs, North Dakota. The defendant indemnity company furnished the bond for $10,000 now in suit, in compliance with § 3111, Comp. Laws 1913.' In the fall of 1916, Hogy became insolvent and had shipped out of the Burlington elevator some $20,000 worth of grain, the storage tickets for which he was unable to redeem. About the middle of. October a representative of the defendant company went to Minot for the purpose of adjusting Hogy's affairs in so far as it was interested, but Hogy had previously called the holders of the storage tickets together for the purpose of making an arrangement whereby he would be permitted to continue in business. The holders of the tickets, with some exceptions, surrendered them, taking Hogy's notes for the then market price of the grain represented, due in one year, and the latter in turn surrendered the storage tickets to the defendant who continud upon the bond. It appears that two ticket holders declined to surrender their tickets and the defendant company subsequently settled with them by paying $1,834.87. The notes not having

been paid at maturity, this action was brought upon the bond to recover the amounts represented by them.

The action is in the name of the State on the relation of Henry Olson who sues for himself and others beneficially interested. The complaint, aside from formal allegations, alleges the receipt and storage by Hogy of certain definite quantities of grain for and on behalf of ten individuals, also amounts unknown for seven others; that Hogy obtained possession of the storage receipts through fraudulent representations to the effect that it was necessary for him to have possession of the receipts to avoid criminal prosecution. That he had secured the consent of all the outstanding receipt holders to the surrender of the receipts in exchange for notes, and that certain of the receipt holders had previously agreed to surrender their receipts if all would do so. It is further alleged that the receipts were surrendered through a mistake of fact, and in reliance upon the fraudulent and false representations that all the receipt holders had consented. The seven parties, the amount of whose receipts are alleged to be unknown to the plaintiff, do not participate as plaintiffs and are made defendants. In the answer of the Indemnity Company it is denied that the storage tickets are outstanding and unpaid and it is alleged that Hogy, on or about the 15th day of October, 1916, purchased from the owners the grain represented by the receipts for full consideration agreed to be paid, and that he gave his promissory notes to the owners in payment. It is further alleged that this settlement was not fraudulent and has not been rescinded. The settlement by the defendant company with two other defendants, Byerly and Durbin, by purchasing their tickets for $1,834.87, is pleaded and the judgment allows the benefit to the defendant company.

When the action came on for trial the defendant moved that it be tried to the court on the ground that the issues were of an equitable nature. The court, however, denied the motion and the action proceeded to trial before a jury. At the conclusion of the testimony thirty-four interrogatories were submitted upon which the jury were required to return their special verdict.

The first assignment argued upon this appeal is that the court erred in denying the defendant's motion for judgment *non obstante*. The

principal argument in support of it is founded upon the lack of testimony going to establish the allegations in the complaint of fraud and mistake which would vitiate the settlement.   It is contended that in the absence of proof in support of these allegations and affirmative findings in the special verdict, there is a fatal omission of proof which presumably cannot be supplied and which would therefore require the entry of a judgment for the defendant.   The fallacy of this argument lies in its failure to distinguish between essential and nonessential allegations in the complaint.   From the entire statement of the cause of action, it is apparent that liability is predicated upon a breach or breaches of the indemnity bond, consisting in the failure to deliver or pay for grain stored or sold.   There may be liability on the bond for a breach of either character.   It may well be that an action for the nondelivery of the grain represented by the storage tickets could not be brought without a rescission of the settlement represented by the notes and the surrender of the tickets.   But the breach of the bond that is principally relied upon in this case is not the failure to deliver the grain but the failure to pay for it at the price arrived at in the settlement.   The terms of the bond are sufficiently broad to cover a breach of this character.   It is therefore immaterial, so far as liability is concerned, whether or not the settlement is rescinded.   The plaintiffs are attempting only to recover the price agreed upon. Therefore, the allegations with reference to mistake and fraudulent misrepresentations may be properly disregarded.

The next assignment concerns the denial of the defendant's motion for a judgment upon the verdict.   This assignment, like that first considered, is based upon the existence of a supposed necessity for a special verdict to cover the questions that might be material if liability were predicated upon a rescission of the settlement.   As previously said, it is not based upon a rescission but upon the failure to carry out the settlement.   It is therefore not essential that there should be any finding justifying rescission.

It is next contended that the defendant was entitled to an instructed verdict for two reasons:   (1) Because the plaintiffs have failed to prove the allegations regarding fraud; and (2) because the evidence discloses that Hogy was a necessary party to the determination of the

issues presented. The first reason has already been sufficiently answered. As to the second, it does appear that the bond in suit is the joint bond of Hogy and the Indemnity Company,—not several nor joint and several. It also appears that the defendant in its answer alleges the defect of parties, claiming that Hogy was a necessary party to the complete determination of the issues presented. It seems that this objection was well taken, but it does not follow that the judgment must be reversed for that reason. While this action is primarily an action for the recovery of money, it nevertheless involves features of a suit in equity in that it binds all parties who may possibly have claims against the Indemnity Company, and amounts to a final determination as to all parties of its liability under its bond. The company, however, does not ask for a judgment against Hogy the principal, nor does it seek any other relief as against him. Neither does the plaintiff seek any relief against Hogy. Thus, the objection that Hogy was not made a party defendant resolves wholly to the technical one, available in an action at law, of requiring all joint obligors to be made parties defendant. This technical rule, however, does not obtain in suits of an equitable character and it is well settled that in such suits the joinder of parties is largely in the discretion of the court, and this discretion will not be so exercised as to preclude the entry of a judgment where one can be entered without affecting the rights or obligations as between the defendant suitor and a co-obligor. See 20 R. C. L. 703–705. It is apparent in the instant case that the rights of the plaintiff against this defendant may be fully determined in the absence of Hogy and that his presence would only become indispensable in the event some relief were sought against him by one of the parties.

It is further objected that the court erred in trying the case as a jury case. But this error is in no way prejudicial to the defendant. Considering that the action was triable to the court as a suit in equity, the court could properly take an advisory verdict under § 7608, Compiled Laws of 1913, and it could adopt the findings of the jury in the special verdict as findings of fact upon which to base the conclusions of law and judgment. See Emery v. First Nat. Bank, 32 N. D. 575, 156 N. W. 105; Peckham v. Van Bergen, 8 N. D. 595, 80 N. W. 759. A review of the record discloses that all of the facts material to establish

the defendant's liability are amply supported by the evidence and would warrant the making of independent findings by the court. It was clearly not error for the court to submit the case to a jury and to adopt its findings.

Error is predicated upon admission of testimony. Some of the plaintiffs were permitted to testify that they did not intend to release the bond company when they gave up their tickets and took the notes, and that in taking the notes they did not intend to receive them as payment for the grain. It is our opinion that that evidence was properly admitted. The contention of the defendant throughout is based in substance upon a novation; that is, it is claimed that for Hogy's obligation to deliver the grain stored there had been substituted a new obligation between the same parties in the shape of a promissory note which operated to extinguish the previous obligation to deliver the grain or to pay the price. Section 5830, Compiled Laws of 1913, states that a novation is made: "(1) By the substitution of a new obligation between the same parties with *intent* to extinguish the old obligation." In so far as the circumstances in which the tickets were exchanged for the notes would go to establish a novation, they were admissible and they were in fact before the jury. But still the circumstances themselves leave the question in an equivocal state. A novation would not be effected, therefore, unless it were so intended. Whether the obligation to deliver grain be considered as extinguished by the subsequent obligation to pay a definite price incorporated in the note, or whether the note itself is to be regarded as the payment of that price, are both open questions dependent upon intention. 30 Cyc. 1194 et seq.; 22 Am. & Eng. Enc. Law, 555; 21 R. C. L. pp. 70–73. The general rule is that prima facie the giving of negotiable paper by the debtor to the creditor amounts at most to conditional payment. That is, it does not operate to extinguish the debt unless the note itself is paid. But if it is intended between the parties that it shall so operate, that intention will be given effect. Whether the action before us be considered as based upon the failure to redeliver grain stored, or the failure to pay for grain bought, the intention of the parties is material. The acts being equivocal and the intention being material, it is proper to receive direct evidence of intention from the parties to

the transaction. 7 Enc. Ev. 596. It might be added in this connection that the testimony relative to the intention not to release the bond company corresponds in every way with the legal effect of the transaction as brought out in the testimony. Section 5835, Comp. Laws 1913, expressly provides that a release of one joint debtor does not release the others. Hogy and the bond company were jointly liable on the bond.

The contention that the court erred in permitting a witness to narrate conversations that he had had with Hogy is without merit, for it appears in the transcript of the testimony that the witness had testified at some length to conversations and transactions with Hogy without any objection being made and it further appears that no objection was made or attempted to be made by the defendant's counsel until the answer of the witness, that is specifically objected to, was before the jury. In fact, no objection was made at all, but after the particular answer was in defendant's attorney moved to strike it out as hearsay. Having permitted a series of questions to be asked without objection, the answers to which could only be hearsay, it was clearly not prejudicial error to refuse to strike out on motion a particular answer incorporating hearsay testimony of the same character.

Finding no error in the record prejudicial to the defendant, the order and judgment appealed from are in all things affirmed.

CHRISTIANSON, Ch. J., and GRACE and ROBINSON, JJ., concur.

BRONSON, J., did not participate.