WALTER GRAHAM and Philip Rau, Doing Business under the Name of GRAHAM & RAU, Appellants, v. ALLIANCE HAIL ASSOCIATION OF NORTH DAKOTA, a Corporation, Respondent.

(182 N. W. 463.)

**Insurance — receiving notice of loss by mail held a waiver of notice by registered mail.**

1. In an action on a hail insurance policy, where the insurance company, without objection, received by mail notices of loss and requests for adjustment, it is *held* that it waived the provision of the by-laws requiring such notice to be sent by registered mail.

**Insurance — notices required by by-laws of hail insurance society held given under evidence.**

2. The evidence is examined, and it is *held* that there is substantial evidence that the notices required by the by-laws were given.

**Contract — jurisdiction of court held not ousted by conditions precedent in hail policy making adjustment by association final.**

3. Where a policy issued by a mutual hail insurance association expressly declares certain provisions of the by-laws relating to adjustment to be conditions precedent, the by-laws, construed in accordance with the expressed intention, do not serve to oust the courts of jurisdiction.

Opinion filed March 29, 1921.

Appeal from District Court of Burleigh County, *Nuessle,* J.

Reversed and remanded.

*Peter A. Winter,* for appellants.

"In civil cases if hearsay is admitted without objection, the evidence is competent although any adherent weakness still attaches." 16 Cyc. 1194.

Testimony elicited by respondent's own attorney, and let in without objection, became good evidence upon which the jury could base their verdict. 4 C. J. 703; 80 Pac. 856; 131 Pac. 69; 94 Pac. 553; State ex rel. Race v. Cranney, 71 Pac. 50.

*C. S. Buck,* for respondent.

The courts have uniformly held that where the contract of insurance, either fire or hail, provides a manner for determining the actual loss, such a provision is binding on both of the parties and must be

complied with.  Montgomery v. Whitbeck, 12 N. D. 385; Peterson v. Independent Order of Forresters, 166 N. W. 951; Mutual Ins. Co. v. Atty. Gen. 131 N. W. 1119.

GRACE, J.   This action is one to recover loss, sustained by hail, to a certain crop of barley grown upon certain land described in the policy.

It was tried to the court and jury.  The jury returned a verdict in plaintiff's favor in the sum of $400.  The defendant moved for judgment, notwithstanding the verdict, and the court made an order granting the motion.  Judgment was entered upon that order for a dismissal of the action and for the sum of $43.40 costs, in favor of defendant, and from the judgment plaintiffs appeal.

The complaint, in substance, charged that the loss upon given dates was in the amount of $400.  The defendant, in its answer, admits its corporate existence, the issuing of the policy, the giving of a premium note in the sum of $64.40, the proper description of the land, and the amount and kind of crops thereon insured.  It admits that it received written notice of the loss.  It also pleads a general denial.

It further claims, in its answer, that Malin, one of its adjusters, upon notice of the claim of loss, on the 19th and 21st day of August, 1918, examined the same, and claimed that no loss had been suffered by reason of hail on those dates, and that plaintiff did not accept the adjustment, and further alleges that the plaintiff did not immediately notify the secretary of the defendant's corporation by letter, calling for a readjustment, as provided in § 2 of article 14 of the by-laws of the defendant company, which is claimed to be a part of the policy of insurance.

The defendant further alleges to have suffered damages, by way of expense, in the sum of $20, claiming that the loss was less than 5 per cent, and in that event, by the terms of the by-laws, no loss is allowable.

The following facts are established by substantial evidence: It is admitted that the notice of plaintiffs' loss, by reason of the two hail storms, was by them sent to and received by the defendant.  Upon receiving this notice, defendant sent one Malin, as its adjuster, to adjust the loss.  He did not do so.  He refused to allow plaintiffs anything for the loss, claiming that it was less than 5 per cent, and that, therefore, the company was not liable.

That defendant refused to pay any loss. This appears from exhibit "6," which is entitled "Adjustment of Loss," which was signed by the adjuster, but to which the plaintiffs refused assent.

After the hail storms had destroyed the plaintiffs' crop, Rau called up the agent of defendant, Arnold Gerberding, and notified him of the loss. Gerberding's name appears on the application as the agent of defendant. He made a proof of loss, which plaintiff signed and which was sent by registered letter to the company and received by it.

On cross-examination, Rau testified that he sent a second notice; that he was not satisfied—meaning, with the alleged adjustment. He said that he notified the agent (Gerberding)—talked with him just the same as the first time. He testified that he, the plaintiff, did not send the notice, but that, upon being asked if he knew whether the banker (Gerberding) sent in the notice, or not, he answered, "Yes," testifying further that the banker told him so.

There was no objection to this testimony, on the ground that it was hearsay, and, in these circumstances, it was proper for the jury to consider the same. Defendant was again notified of plaintiffs' dissatisfaction of and resistance to the adjustment, as attempted to be made by the defendant, by Mr. Winter, plaintiff's attorney.

We think the evidence is sufficient, in this regard, so that the jury could find therefrom that a second notice was sent by plaintiffs to defendant, notifying it of plaintiffs' dissatisfaction in regard to the adjustment and of their refusal to accept the same.

As a matter of fact, there was no adjustment of any kind or character, but a simple refusal of the defendant to allow any loss whatever. The clause in the by-laws relied upon by defendant to evade liability provides: "An adjuster will be sent within a reasonable time after the loss is reported, and his decision shall be binding upon the insured, unless objected to by the looser, when, the looser shall *immediately* notify the secretary by registered letter, calling for a readjustment, and *this readjustment shall be final, subject only to review and change by the board of directors.* In case of readjustment the expense shall be borne equally by the insured and the association, insured's share of expense to be levied as part of his assessment."

That provision, as we view it, is absolutely void, in so far as it seeks and pretends to oust the courts of jurisdiction of any action which

might be brought by the insured to recover for the loss sustained, if by inadvertence he failed to send the second notice in the time and manner required by the by-laws.

In addition to this, the provision is absolutely unreasonable. It constitutes nothing but a trap into which the unwary may fall. The defendant having received due notice of the loss, it was its duty to adjust and allow all the loss plaintiffs had sustained, not exceeding the amount of the policy. But it refused to allow any loss, and plaintiffs refused to receive any such alleged adjustment, which was in fact no adjustment. Plaintiffs then had an absolute right, in law, to proceed in court to compel defendant to pay the amount of such loss. And any provision in the by-laws which denies him such right is, as above stated, wholly invalid. 1 Bailey, Jur. § 54; Muldrow v. Norris, 2 Cal. 74, 56 Am. Dec. 313, 13 C. J. 455, 456, and cases cited in notes 8 and 9.

Insurance companies, or other corporations, partnerships, or persons, cannot, in this manner, oust the court of its jurisdiction of this subject-matter, clearly within its jurisdiction, nor thus prevent plaintiffs from their right of having due process of law.

There is not only sufficient evidence, substantial in character, to support the verdict, which plaintiffs received in regard to the amount of damage which they sustained, to their barley crop, by reason of the two hail storms, but it is also of a very conclusive character. Each of four witnesses gave positive testimony that plaintiffs' loss on the barley field was total.

It is needless to set forth such testimony. Sufficient to say, it is very abundant and substantial. The insurance policy provided for $8 per acre, in the event of a total loss of the barley by hail. There were 50 acres of barley. The total amount of damages recovered by plaintiffs was $400.

Upon argument of the case before this court, attorney for the defendant and respondent advanced the point that this court had no jurisdiction, for the alleged reason that the appeal was not taken within six months after the entry of the judgment. There is no merit in this contention.

It is true that the notice of entry of judgment served by defendant upon plaintiffs was dated the 23d day of June, 1920, and that the notice of appeal recites an appeal from a judgment entered in this

case on the 23d day of June, 1920, and that the undertaking describes the judgment entered at that date, but both the notice and the undertaking describe accurately the judgment appealed from as one in the above-entitled action; and the undertaking describes it as a judgment of $41.40, which was the amount thereof, except for the fee for entry of judgment, which was $2, making a total of $43.40.

The judgment was not entered on the 23d day of June, 1920, but on the 1st day of July of that year, as appears from the judgment duly authenticated by the signature and seal of Charles Fisher, clerk of the district court of Burleigh county, and it is a part of the judgment roll. The most that can be said is that, in the notice of appeal and undertaking, a clerical error was made in inserting the wrong date of the entry of judgment. This was, no doubt, caused by the erroneous date of entry contained in the notice of entry served by defendant upon plaintiff.

The notice of appeal and undertaking were dated the 21st day of October, 1920, and due and personal service thereof, and the specifications of error, were by defendant admitted on the 20th day of December, 1920, and they were filed with the clerk of court December 30, 1920. The appeal, therefore, was wholly perfected within the six months' period of time allowed for an appeal from a judgment. Hence, the appeal was properly here, and this court had full jurisdiction to hear the same.

The jurisdiction of this court is not attacked otherwise than as above stated. It is clear, from what has been said, that the order of the trial court, vacating the judgment in favor of plaintiff, and ordering judgment in favor of defendant, and for a dismissal of the action, and for costs, was without any authority in law and wholly void. It is apparent that the judgment entered thereon in favor of defendant must be reversed.

The judgment appealed from is reversed, and the case is remanded to the trial court, and it is directed to enter an order reinstating the judgment in favor of plaintiff.

The appellants are entitled to their costs and disbursements on appeal.

ROBINSON, Ch. J., concurs.

BRONSON, J (concurring specially). I concur in the reversal of the

judgment. After the respective hail storms of August 19 and 21, 1918, two notices of loss were sent to the defendant. These notices were typewritten, signed by the plaintiff, upon stationery of the defendant's agent, and as the testimony sufficiently shows were sent to the defendant by its agent, the cashier of the bank at Regan. It does not appear in the evidence that these notices were sent by registered letter as required in the by-laws. After an adjuster of the defendant had visited the farm and made an offer of adjustment to the plaintiffs, which was refused, one of the plaintiffs testified that he requested this banker agent of the defendant to again send notice to the company; that this banker agent told him that he did send such notice. The reception of any notice for readjustment, by mail or otherwise, was denied by the defendant.

The by-law involved provides that when an adjustment is objected to by the insured, he shall immediately notify the secretary by registered letter calling for readjustment, and this readjustment shall be final, subject only to review and change by the board of directors. Later, the attorney for the plaintiffs notified the defendant that he had for collection loss under the policy upon which a 100 per cent loss was claimed, and stated that he was writing to the defendant in the hope that it might desire to pay such loss before any action was started. In response to this letter the defendant explained the situation to the attorney, and advised him that they would send another man to see if he could effect an adjustment. A second adjuster was sent out, but the record does not disclose what efforts, if any, were made toward another adjustment. The question was submitted to the jury as to whether the defendant received this notice asking for a readjustment.

It accordingly sufficiently appears in the evidence that the defendant received the first two notices, not by registered letter so far as the record discloses; without objection; that it acted upon such notices and sent an adjuster. That the adjustment proposed by its adjuster was refused by the plaintiff. The jury, through its findings, determined that a second notice for readjustment was sent to the defendant. It further appears, without dispute, that after the defendants were notified by plaintiffs' attorney it did send another adjuster. The record does not disclose that any adjustment was made or tendered by the defendant through this second adjuster.

I am of the opinion that the defendant waived the requirement of the by-laws that these notices must be sent by registered letter through recognition of the first notices and the manner in which the same were permitted to be sent through its agent, the banker, and that it is not in a position to require strict compliance with its by-laws for another adjustment or review thereof by the directors, not having tendered or made a readjustment after notice thereof was given. See Schultz v. Des Moines Mut. Hail & Cyclone Ins. Asso. 35 S. D. 627, 153 N. W. 884, Ann. Cas. 1917D, 78; Stockwell v. German Mut. Ins. Asso. 37 S. D. 348, 158 N. W. 450; see note in 15 L.R.A.(N.S.) 1075.

4 Cooley, Briefs on Ins. 36, 58–60. The provisions of the by-law cited do not serve, by its terms, to oust the jurisdiction of the courts. It operates as a condition precedent for the adjustment of claims between the parties. There is no provision in the by-laws inhibiting final resort to the courts. 4 Cooley, Briefs on Ins. 3680, 3681; note in 15 L.R.A.(N.S.) 1056.

CHRISTIANSON, J., concurs.

BIRDZELL, J. (specially concurring). I concur in the disposition made of this case in the principal opinion, but on grounds that are not fully stated in any of the opinions prepared by my associates. The case seems to call for an interpretation of the by-laws relating to adjustments. The by-laws read as follows:

"Article XIV. Losses and Adjustments.

"Sec. 1. Losses must be reported at once to the secretary by registered letter, and no loss will be allowed unless so reported within five days, and unless such loss shall be at least 5 per cent, and if the insured in his notice of loss calls for an adjustment, and it is found that the association is not liable for any loss according to the policy, the assured shall pay all expenses of the adjustment, and no loss to grain after it is cut will be allowed, or after September 15th of each year. All losses payable December 1st, except that where cash premium has been paid the loss shall be paid by September 15th. (When grain is ripe at time of loss, cut at once, as adjustment can be made after grain is cut.)

"Sec. 2. An adjuster will be sent within a reasonable time after the loss is reported, and his decision shall be binding upon the assured unless objected to by the loser, when the loser shall immediately notify the secretary by registered letter calling for a readjustment, and this readjustment shall be final, subject only to review and change by the board of directors. In case of readjustment the expense shall be borne equally by the insured and the association, the insured's share of expense to be levied as a part of his assessment."

The foregoing by-laws are referred to on the face of the policy, where it is expressly stated that they are made *conditions precedent.* The pertinent inquiry is: What are the conditions precedent to be gathered from the sections above quoted? It is certain that they do not provide for arbitration. They provide for notices to the insurance company, and in response to these notices the company agrees to send an adjuster, and as a last step the board of directors may review a readjustment. The adjuster is, of course, the adjuster of the company, and no matter how strong the language used in describing the binding force of the adjustment, it remains only the determination of one of the parties interested, and is in no sense an arbitration. Before there can be an arbitration, there must be someone capable of sitting in judgment on the matter in dispute between the parties, for "arbitration implies the exercise of the judicial function. An arbitrator ought to be free from prejudice and able to maintain a fair attitude of mind toward the subject of controversy. It would be a travesty upon the ideas of judicial propriety or of judicial work for a man to be an arbitrator to settle the amount of his own liability. It is contrary to natural right and fundamental principles of the common law for one to judge his own cause." Rugg, Ch. J., in Brocklehurst & P. Co. v. Marsch, 225 Mass. 3–8, 113 N. E. 646. See also White v. Middlesex R. Co. 135 Mass. 216; 3 Williston, Contr. § 1724. In my opinion this principle is as applicable in the adjustment of losses in mutual insurance companies as it is in stock companies, for the interest of the individual claimant is, for purposes of his claim, adverse to that of every other member.

In so far as the by-laws may be construed as an agreement by the insured to accept as final the adjustment of the board of directors, they

would be clearly void. Comp. Laws 1913, § 5927; Huber v. St. Joseph's Hospital, 11 Idaho, 631, 83 Pac. 768.

Since the by-laws really contain no provision for arbitration at all, or at most contain provisions that cannot be given effect as *arbitration* clauses, we must revert to the original question: What condition or conditions precedent *are* prescribed? It would seem that the only conditions which the insured is bound to comply with are those requiring the giving of the notices of loss and of subsequent dissatisfaction with the adjustment. The giving of the first notice was admitted, so the only controverted fact regarding notice relates to the notice of the insured's dissatisfaction with the adjustment. There is ample evidence in the record from which the jury could find that this notice was given. This is referred to in the other opinions, and need not be repeated here, although it may be observed that the claim was promptly put in the hands of the plaintiffs' attorney, who wrote less than a month after the attempted adjustment, advising the defendant of his intention to sue.

Being of the opinion that the by-laws have only the effect of requiring notices to be given, and that there is ample evidence of a reasonable compliance on the part of the insured, I concur in ordering judgment on the verdict.