JOHN BUSCH and Allert Busch, Copartners Doing Business under the Name of Busch Brothers, Respondents, v. JAMES MANAHAN and George C. Lambert, Receivers for the Equity Co-operative Exchange, a Corporation, Appellants.

(217 N. W. 658.)

**Sales — purchase money is payable in money.**

1. In the absence of any agreement to the contrary, the law implies that an indebtedness for purchase money is payable in money.

**Payment — acceptance of bill of exchange is conditional payment.**

2. In the absence of a special agreement to the contrary the acceptance of a bill of exchange drawn by an agent upon his principal for purchase money is merely a conditional payment, defeasible on the nonpayment of the bill.

**Payment — presumption is that demand draft on buyer by buyer's agent to seller is accepted on condition of payment on presentation.**

3. Where a vendor of grain receives from the agent of the local elevator a demand draft drawn by such agent upon his principal for the purchase money, the presumption is that such draft is accepted on the condition that it shall be paid on presentment; and the indebtedness for the purchase money is not discharged until the draft is paid. In case the draft is not honored on presentation, the original indebtedness for which the draft was given is not discharged, and the vendor may recover on the original debt the same as though the draft had never been given.

Opinion filed February 10, 1928. Rehearing denied February 24, 1928.

Payment, 30 Cyc. p. 1195 n. 29; p. 1203 n. 65; p. 1271 n. 84. Sales, 35 Cyc. p. 265 n. 9; p. 267 n. 32; p. 269 n. 43.

From a judgment of the County Court of Wells County, *Johnston,* J., defendants appeal.

Affirmed.

*Usher L. Burdick,* and *Hoogesteger & Manahan,* for appellants.

"Where there is an agreement to take it as an absolute payment, the acceptance of a promissory note, bill of exchange, or order, even of

Note.—On the rule that note given for debt not payment unless so intended, see annotation in 10 L.R.A.(N.S.) 534; 35 L.R.A.(N.S.) 44; 21 R. C. L. 70; 3 R. C. L. Supp. 1134; 4 R. C. L. Supp. 1403; 5 R. C. L. Supp. 1142.

a third person, constitutes a payment, so as to preclude an action upon the original indebtedness." 30 Cyc. 1199.

"It is settled law that a promissory note executed as payment and accepted as payment discharges an existing debt as fully as if paid in money." Warring v. Hill, 89 Ind. 497.

"Whether the note thus accepted in payment can be collected or not is a matter into which the principal debtor cannot inquire." Hardin v. Branner, 25 Iowa, 367.

"The general rule is that prima facie the giving of negotiable paper to the creditor amounts at most to conditional payment; that is, it does not operate to extinguish the debt, unless the note itself is paid. But if it is intended between the parties that it shall so operate, that intention will be given effect." State v. Royal Indemnity Co. 44 N. D. 550, 175 N. W. 625.

"The circumstances and conduct of the parties taken together may show an express understanding that the check is taken in satisfaction of the debt, or estop the creditor from claiming to the contrary." Conde v. Driesam Co. 86 Pac. 825.

"When a check is taken to a bank, and the bank receives it and places the amount to the credit of the customer, the relation of creditor and debtor between them subsists, and then it is not that of principal and agent." Plumas County Bank v. Bank of Rideout, S. & Co. (Cal.) 131 Pac. 360.

"The transferees of contracts or choses in action, also of negotiable paper, when so transferred as to be open to defenses, are properly called 'assigns.'" National Bank v. Pick, 99 N. W. 65, 13 N. D. 74.

*John A. Layne,* for respondents.

"The plea of payment in an answer to a complaint for liquidated damages, confesses the cause of action, and casts the burden upon the defendant to sustain such plea." Lokken v. Miller, 9 N. D. 512, 84 N. W. 368.

Payment by a check which was afterwards dishonored cannot be considered a payment in any sense of law. Schaffer v. McFarland (S. D.) 207 N. W. 982.

CHRISTIANSON, J. Plaintiffs brought this action to recover the purchase price of certain grain. In their complaint they allege that on or

about January 16, 1925, they "sold and delivered to the defendants at Bowdon, North Dakota, grain received by the defendants upon storage tickets issued to the plaintiffs by the defendants;" and that defendants promised and agreed in writing to pay to the plaintiffs for said grain the sum of $480.70, but that the defendants have not paid the same or any part thereof. The defendants, in their answer, admit "that on or about the 16th day of January, 1925, the plaintiffs sold and delivered to the defendants certain grain in the value of $480.70, and allege that before the commencement of this action and on the 16th day of January, 1925, these defendants paid to the plaintiffs the sum of $480.70 in full payment of said grain." The issues thus framed were tried to the court without a jury and resulted in findings of fact, conclusions of law and order for judgment in favor of the plaintiff. Judgment was entered accordingly and the defendants appealed.

The material facts are as follows: On January 16, 1925, defendants were operating an elevator at Bowdon in this state. The plaintiffs had stored certain grain in such elevator, for which they held storage tickets, issued by the local elevator agent. On that day, to wit, January 16, 1925, the defendants sold such stored grain and the local elevator agent delivered to them in payment thereof two so-called wheat checks or drafts, for $43.30 and $427.40, respectively, drawn by the local elevator agent on "James Manahan and George Lambert, receivers of the Equity Co-operative Exchange, St. Paul, Minn." On that same day the plaintiffs indorsed these drafts in blank and deposited them in the Farmers & Merchants State Bank of Bowdon, where they were credited to the checking account of the plaintiffs. On January 19, 1925, the Farmers & Merchants State Bank of Bowdon closed its doors. The defendants were informed of the closing of the Bowdon bank, the day it was closed. At the time, the defendants had on deposit in the Bowdon bank, in a checking account in the name of their local elevator agent at Bowdon, the sum of $235.32. On January 26, 1925, the two drafts in question were presented to the defendants, payment was refused and the drafts were protested for nonpayment. It is the claim of the defendants that they stopped payment on the drafts in order to enable them to offset against the Bowdon bank the amount of the checking account carried in such bank in the name of defendants' agent. Apparently the Twin City Bank which presented the drafts for payment

charged back the amount of the drafts and the protest fees and the drafts were returned to the Bowdon bank or the receiver thereof. So far as the record shows the defendants made no attempt to adjust the matter with the receiver. The receiver claimed that the plaintiffs were liable upon their contract of indorsement for the full amount of the drafts and protest fees and sought to hold them to such contract. It appears that the plaintiffs had drawn checks against their account in the Bowdon bank and that the Bowdon bank had paid out on such checks a portion of the amount credited to plaintiffs' checking account at the time the drafts in suit were deposited. The plaintiffs thereupon, on or about December, 1925, made settlement with the receiver of the Bowdon bank and paid him the full amount due upon their contract of indorsement of the drafts in suit, payment being made by releasing or assigning to the receiver the full amount of the balance in the checking account of the plaintiffs in the Bowdon bank and by cash payment of the difference between such balance and the aggregate amount of the two drafts and protest fees. Upon such adjustment and payment the receiver turned back to the plaintiffs the two drafts in question. The plaintiffs thereupon brought this action against the defendants for the purchase price of the grain. As will be noted the only defense interposed is that of payment. Under the issues as framed defendants admitted the original liability and assumed the burden of proving that such liability had been discharged. Lokken v. Miller, 9 N. D. 512, 84 N. W. 368. Did the defendants pay for the grain? That was the only question involved in the trial court and is the only question involved here. If the defendants paid for the grain, then plaintiffs have no cause of action. If the defendants did not pay for the grain, then the plaintiffs are entitled to recover the purchase price and the judgment is correct.

In our opinion defendants wholly failed to establish payment. In the absence of any agreement to the contrary the law implied that payment should be made in money. 21 R. C. L. p. 37; 35 Cyc. 264. The defendants' agent did not pay in money but delivered to the plaintiffs two drafts or bills of exchange drawn by him on his principals. In the absence of a special agreement to the contrary, it must be assumed that plaintiffs accepted the bills of exchange merely as conditional payment of the purchase price, defeasible on the nonpayment of the instruments.

Lloyd Mortg. Co. v. Davis, 51 N. D. 336, 36 A.L.R. 465, 199 N. W. 869 ; Eggelston v. Plowman, 49 S. D. 609, 44 A.L.R. 1231, 207 N. W. 981; 30 Cyc. 1194; 21 R. C. L. pp. 60, et seq.; 2 Dan. Neg. Inst. 5th ed. § 1623. See also Lokken v. Miller, 9 N. D. 512, 84 N. W. 368; State ex rel. Olson v. Royal Indemnity Co. 44 N. D. 550, 175 N. W. 625 ; Embden State Bank v. Boyle, 50 N. D. 573, 196 N. W. 821; A Leschen & Sons Rope Co. v. Mayflower Gold Min. & R. Co. 35 L.R.A. (N.S.) 1, 97 C. C. A. 465, 173 Fed. 855 ; City Nat. Bank v. Denslow, 114 Neb. 600, 209 N. W. 254; McFadden v. Follrath, 114 Minn. 85, 37 L.R.A.(N.S.) 201, 130 N. W. 542. In this case there is no evidence of a special agreement that the bills of exchange were given and accepted in payment of the purchase price of the grain. On the contrary, all the circumstances indicate that they were given and accepted with the understanding that they would be regarded as payment only, if, and when, paid. The acceptance of the draft did not operate as a payment, but merely suspended plaintiffs' original right of action until the draft was presented for payment. 21 R. C. L. pp. 60, 61. If the drafts had been honored on presentation, the conditional payment would have become absolute and the indebtedness for the purchase price would have been discharged. But the drafts were not honored. On the contrary payment was refused and they were protested for nonpayment, and the plaintiffs became liable upon their contract of indorsement for the face amount of the drafts and the protest fees. Thereafter, the plaintiffs discharged in full their obligations under the contract of indorsement and the drafts were returned to them. 30 Cyc. 1203. In these circumstances there was no payment of the purchase price of the grain. The indebtedness for such purchase price was not discharged, and the plaintiffs may recover on the original debt the same as though the bills of exchange had never been given. 21 R. C. L. p. 61; 20 Cal. Jur. p. 924; 30 Cyc. 1194–1197; 22 Am. & Eng. Enc. Law, pp. 550, 552; Flannery v. Harley, 117 Ga. 483, 43 S. E. 765 ; Newhall v. Vargas, 13 Me. 93, 29 Am. Dec. 489. See also Lloyd Mortg. Co. v. Davis, supra.

Judgment affirmed.

Nuessle, Ch. J., and Burke, Birdzell, and Burr, JJ., concur.